UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DOMINGO LORA,

               Petitioner,

   - against -

UNITED STATES CITIZENSHIP and
IMMIGRATION SERVICES, et al.,

               Respondents.

                       MEMORANDUM
                       AND ORDER

                       05 CV 4083 (JG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

A P P E A R A N C E S :

       HARRY DeMELL, Esq.
           225 Broadway
           Suite 1605
           New York, New York 10007
           Attorney for Plaintiff

       ROSLYNN R. MAUSKOPF
           United States Attorney
           Eastern District of New York
           147 Pierrepont Street
           Brooklyn, New York 11201
       By:  Elliot M. Schachner
           Assistant U.S. Attorney
           Attorneys for Defendant

JOHN GLEESON, United States District Judge:

      Petitioner Domingo Lora, a lawful permanent resident, challenges the denial of

his naturalization application by the United States Citizenship and Immigration Services. Lora's

application was denied on the ground that he had not established that he is a person of good

moral character, as required by 8 U.S.C. § 1427(a)(3). Pursuant to 8 U.S.C. § 1421(c), Lora

seeks this Court's de novo review of his application for naturalization. On March 29, 2007, after

an evidentiary hearing, I entered an order stating that the petition was granted and that this

opinion setting forth the reasons for that decision would follow.

FACTS

A.    Lora's Immigration History and Current Circumstances

Lora was born on March 24, 1972, in the Dominican Republic.  He entered the United States lawfully in 1988.  He has never left the United States since that time.  Lora is not married; however, he has lived together for 10 years with Ana Pichardo, who Lora describes as his "future wife," and their 8-year-old daughter Destiny.  Lora is an electrician, a member of Local 3 of the International Brotherhood of Electrical Workers.  He resides with Pichardo and Destiny at 7905 60th Street, Glendale, New York, a home Lora purchased in 2000.

Lora is a hard-working individual.  By refinancing the home he lives in, he purchased an investment property at 80-23 57th Street in Glendale.  The testimony at the hearing referenced a second piece of investment property as well.

Lora has engaged in charitable work in his community.  In particular, he has performed electrical work for two churches.  He has performed the work himself, and he purchased the materials needed to complete the work.

Lora supports his future wife and child.  Despite his somewhat rocky childhood and a minor property conviction as a young adult, both of which are discussed further below, he has become, at age 35, a hardworking and respected member of his community.

B.    Lora's Criminal History

1.    His Drug Conviction at Age 17

When Lora was in high school he had a part-time position in a grocery store in Manhattan.  Others in the store were drug dealers.  On approximately five occasions, Lora took

money from customers and placed it into the cash register, knowing that the money was being paid for drugs supplied by others in the store. This conduct resulted in a criminal charge against Lora (who provided the name "Alfredo Santos," a family name he used as an alias) alleging that on two occasions in March of 1990, he sold cocaine from the store in concert with others. Lora pled guilty to those charges and on November 8, 1990, he was adjudicated as a youthful offender and sentenced to time served and five years probation. Lora was told by his lawyer that his plea of guilty to the two charges specified in the indictment, <u>see</u> Exhibit P, satisfied his criminal exposure for all of the approximately five occasions on which Lora assisted in the sale of cocaine from the store.

2.      <u>Shoplifting Conviction</u>

In 1997, Lora went to a Sears store on Long Island with a friend. Acting together, the two of them shoplifted approximately $313.00 worth of clothing. On March 19, 1997, Lora pled guilty to one count of attempted petit larceny, and he was subsequently sentenced to a conditional discharge of one year and a fine of $150.00. At the time of his commission of this offense, Lora was 24 years old.

DISCUSSION

A.      <u>Standard of Review</u>

As I have mentioned, my jurisdiction to hear Lora's petition and review de novo the agency's decision denying that petition arises under 8 U.S.C. § 1421(c). That statute provides in relevant part:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and

the court shall make its own findings of fact and conclusions of law and shall, at
the request of the Petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

Like all foreign-born persons, Domingo Lora bears the burden of proving his

eligibility for citizenship. INS v. Pangilinan, 486 U.S. 875, 886 (1988) (citing Berenyi v. Dist.

Dir., INS, 385 U.S. 630, 637 (1967)). Courts appear to agree that applicable burden is one of

preponderance of the evidence. See, e.g., Plewa v. INS, 77 F. Supp. 2d 905, 909-10 (N.D. Ill.

1999). Should the court have doubts about the applicant's eligibility, those doubts should be

resolved in favor of the government. Berenyi, 385 U.S. at 637.

B.        Good Moral Character

A naturalization applicant must demonstrate that during the five years preceding

his application he "has been and still is a person a person of good moral character." 8 U.S.C.

§ 1427(a)(3); *see also* 8 C.F.R. § 316.10(a)(1). My determination in this regard is based upon

"'generally accepted moral conventions current at the time.'" Rico v. INS, 262 F. Supp. 2d 6, 9

(E.D.N.Y. 2003) (quoting Repouille v. United States, 165 F.2d 152, 153 (2d Cir. 1947)); *see also*

8 C.F.R. § 316.10(a)(2). I find by a preponderance of the evidence that Domingo Lora possesses

the requisite moral character to become a citizen of the United States.

In contending otherwise, the government makes several arguments. First, it

argues that Lora lied on his application for naturalization. "No person shall be regarded as, or

found to be, a person of good moral character who, during the period for which good moral

character is required to be established, is, or was, one who has given false testimony for the

purpose of obtaining any benefits under this Act." 8 U.S.C. § 1101(f)(6). Specifically, the

government contends that question 15 on his application, which asked Lora whether he had ever

4

committed a crime for which he had not been arrested, was falsely answered "no." <u>See</u> Exhibit T. This contention is meritless. The government's position is based on the fact that, whereas Lora actually admitted selling cocaine from a grocery on approximately five occasions as a seventeen-year old youth, he was arrested and prosecuted for only two of the five. Significantly, the government does not contend that Lora was involved in drug sales from the grocery store after he was prosecuted in 1990. Rather, the government contends that since the charging instrument to which Lora pled guilty alleged only two of the sales, the others constitute crimes for which Lora was not arrested.

Though the argument has some superficial appeal, only someone not familiar with the way criminal proceedings are conducted could believe that Lora knowingly made a false statement on question 15 of his application. In testimony I credit, Lora asserted that he was told that the case alleging two of the sales covered all of the five sales he made from the store. This is entirely consistent with the standard practice in criminal cases. Indeed, the notion that Lora, after having pled guilty to two of the sales and sentenced, might then have been rearrested and prosecuted for the others, is difficult to fathom. In any event, I find that Lora both correctly answered question 15, and, more importantly, believed that his answer was truthful. <u>See</u> <u>Plewa</u>, 77 F. Supp. 2d at 912-13 (failure to disclose prior arrest in reliance upon immigration counselor's incorrect advice did not preclude finding of good moral character).

Next, the government argues that Lora's criminal activity counsels against a finding that he possesses the requisite moral character to be a citizen of the United States. This argument has more substance. Drug trafficking, no matter how small in scope, is a very serious crime. However, I must take into account the fact that Lora was 17 years old at the time of his

commission of the drug trafficking crimes of which he stands convicted. Though he was old enough to know better, and to quit his part-time job at the grocery store rather than assist in the collection of payments for small quantities of drugs, when viewed in the context of Lora's entire life, it seems unfair to conclude that these crimes should deprive him of citizenship 17 years later.

Because he was 24 at the time, the shoplifting conviction in Nassau County, though a considerably more minor offense, is in a way more troubling. Nevertheless, Lora has demonstrated in the 10-year interval since that offense was committed that he can be, and has become, a law-abiding, hard-working member of his community. Though the shoplifting conviction, both standing alone and when considered in connection with the 1990 drug conviction, makes the decision a close one, I conclude that these circumstances do not prevent Lora from meeting his burden.

The rest of the government's arguments give me less pause. They place substantial reliance on the government's assertion that Lora under-reported his income on his tax returns and falsely claimed charitable deductions on the same returns. Though it is true that there were instances in which unemployment compensation was not reported on the appropriate schedule, and Lora does not have the requisite backup for his charitable contributions, I find that he relied in good faith on the tax preparers he used in connection with filing the subject returns.[1]

For the foregoing reasons, Lora has carried his burden. His petition is granted.

---

[1] I make this finding only with regard to Lora's good faith, going to the question whether Lora has proved by a preponderance of the evidence that he possesses good moral character. I do not mean to suggest one way or the other whether Lora's reliance on his tax preparers was proper.

So ordered.


JOHN GLEESON, U.S.D.J.


Dated:  April 18, 2007
        Brooklyn, New York